**Burry v. Burry**

*Joseph J. Pizonka,* for plaintiff.
*Michael D. Marino,* for defendant.

YOHN, *J.,* October 14, 1982—In this case, this court is again presented with the issue of the proper treatment of the distribution upon divorce of a marital residence purchased with the sole funds of one spouse prior to the marriage and transferred to both spouses jointly as tenants by the entireties during the parties' marriage. By agreement of the parties, division of the marital residence is the only matter at issue before this court.

## STATEMENT OF FACTS

1. In 1951, John Burry purchased with his funds a house located at 323 Warren Street, Norristown, Montgomery County, Pa., for the sum of $8,860.

2. Plaintiff and defendant were married to each other on October 14, 1967. It was the second marriage for both. No children were born of the marriage.

3. On May 16, 1972, defendant deeded the house to himself and plaintiff as tenants by the entireties. At this time the value of the propery was approximately $16,000. Defendant stated that it was not his intent to make a gift but that the transfer was based upon "newspaper advice" and the urgings of plaintiff. Plaintiff stated that she only requested the deed

on a few occasions. No conditions or restrictions were placed on the deed.

4. For purposes of this matter, the property at 323 Warren Street, Norristown, Montgomery County, Pa., is valued at $32,000 and is the only asset considered for distribution. There is no mortgage or lien against the premises.

5. During the marriage both parties were employed as laborers at Superior Tube Company at reasonably comparable rates of pay and are presently so employed. Plaintiff now earns approximately $17,300 per year while defendant earns approximately $18,300 per year.

6. For the first three years of the marriage, plaintiff gave defendant her paycheck and he in turn provided her with spending money. Thereafter, she kept her paycheck and he kept his.

7. Early in the marriage, plaintiff transferred $1,300 from her bank account to defendant's account in order to pay household bills. Additionally, plaintiff provided $300 for construction of a new patio and $1,000 for the purchase of carpeting for the house. Certain bedspreads, curtains, and shrubbery for the house were also purchased by plaintiff at other times.

8. After plaintiff stopped giving her paycheck to defendant, all expenses of maintaining the house, including the mortgage, taxes, insurance, repairs, and utilities were paid solely by defendant. The mortgage was paid in full by 1974.

9. Throughout the marriage both parties cleaned the house. Plaintiff did all of the cooking for both of them.

10. The parties separated in July, 1980, at which time plaintiff moved out of the marital residence. She presently resides in an apartment in Royersford, Montgomery County, Pa., while defend-

ant continues to reside at the marital residence. Plaintiff is 59 years of age, and defendant is 60 years of age. Both are in good health.

11. A final decree in divorce between plaintiff and defendant was granted on August 11, 1981.

## DISCUSSION

### (1) Marital Property

Before apportioning the marital residence between the parties, the court must determine what portion, if any, of the marital residence constitutes marital property and what portion, if any, is excluded as the separate property of either party.

On May 16, 1972, defendant transferred property he brought into the marriage, the real estate located at 323 Warren Street, Norristown, Montgomery County, Pa., to himself and plaintiff as tenants by the entireties.[1]

Under Section 401(e) of the Divorce Code, 23 P.S. §401(e), marital property is defined as "all property acquired by either party during the marriage except: . . . (3) Property acquired by gift, bequest, devise or descent except for the increase in value during the marriage."

Three different methods of analysis have been used in differing jurisdictions to determine the appropriate result in factual situations similar to the case at bar.

---

1. It is of no consequences that the property involved was acquired prior to the effective date of the Divorce Code, July 1, 1980, since the Supreme Court has held that marital property includes all property acquired during the marriage even if such property was acquired before the effective date of the Divorce Code. Bacchetta v. Bacchetta. 498 Pa. 227, 445 A. 2d 1194 (1982).

Under one approach, the transfer by defendant would be considered a gift of one-half interest in the property to plaintiff and a retention of the other one-half interest in himself. If this analysis were followed in the instant case, the following result would ensue: The transfer of the house in 1972, when it was valued at $16,000, by defendant to himself and plaintiff, would constitute a gift to plaintiff of $8,000. Under Section 401(e)(3) of the Divorce Code, this property would be considered separate or non-marital property of the plaintiff except for the increase in value during the course of the marriage. The increase in value to date, also $8,000, of that one-half share would be marital property subject to equitable distribution. The original one-half share still owned by the defendant would remain his separate property. This approach was rejected by this court in Johnson v. Johnson, 109 Montg. Co. L.R. 383 (1981).

A second method of analysis which would result in an even more inequitable result is the "tracing" doctrine as expoused by the Oregon Court of Appeals in Marriage of Sagner, 49 Or. App. 215, 619 P.2d 660 (1980), which entails awarding the value of the property at the date of transfer to joint tenancy to the spouse who brought such property into the marriage. The other spouse would share only in the appreciation or increase in value during the marriage but subsequent to the transfer.

Under this analysis, the property interest in the instant case in the amount of $16,000 at the time of transfer would be considered the separate property of the defendant with plaintiff only being able to share in the appreciation value of $16,000 between that date and these proceedings. This approach was also rejected by this court in Johnson v. Johnson, supra.

The best approach is the view that the transfer of title from one spouse to both spouses as tenants by the entireties constitutes a gift of the property as a whole to the marital entity. This analysis has been followed in the jurisdictions of Colorado, Missouri, Maine, and Illinois, In re Marriage of Moncrief, 36 Colo. App. 140, 535 P.2d 1137 (1975); Conrad v. Bowers, 533 S.W. 2d 614 (Mo. App. 1975); Carter v. Carter, 419 A.2d 1018 (Me. 1980); In re Marriage of Rogers, 85 Ill. 2d 217, 52 Ill. Dec. 633, 422 N.E. 2d 635 (1981).

In Carter, where the marital house was titled jointly and the house had been almost entirely contributed by the husband, the court held that the home was a marital asset subject to equitable distribution absent convincing evidence to the contrary. In so holding, the Supreme Court of Maine stated that the gift exception to the definition of marital property does not apply to a transfer during marriage from one spouse to both spouses jointly. Carter, 419 A.2d 1022; see also Johnson, 109 Montg. Co. L.R. at 388.

In light of Johnson and Carter, this court holds that placing the marital residence in joint names creates a gift to the marital estate absent clear and convincing evidence to the contrary. The gift exception as embodied in Section 401(e)(3) of the Divorce Code is not applicable to such a transfer and the entire value of the marital residence constitutes marital property and is subject to equitable distribution.

Finally, plaintiff contends that the provisions of 68 P.S. §501 require the court to automatically award each party a one-half interest in the house without consideration of any other factors.[2] This ar-

---

2. Section 501. Divorced tenants by entireties hold as tenants in common; suit for sale and division of proceeds.

gument ignores the Stipulation signed by the parties on June 30, 1981 wherein they agreed to the entry of a Decree in Divorce, A.V.M. despite the existence of claims yet to be resolved concerning equitable distribution of marital property, and agreed that this court maintained continued jurisdiction over all such claims. Moreover, the decree in divorce, dated August 11, 1981, specifically retained continuing jurisdiction to resolve the claims of either party to equitable distribution. Therefore, the Act of May 10, 1927, P.L. 884, as amended, does not apply.

In addition, since the parties were divorced after the effective date of the Divorce Code, Pennsylvania law as embodied in the Code controls, particularly Section 401(d), which lists ten factors for the court to consider in an equitable division of the property. The effect of the Act of May 10, 1927, P.L. 884, as amended, in authorizing an equal division of the property formerly held in tenants by entireties is inconsistent with the purposes of the Divorce Code and where, as here, jurisdiction of the divorce proceeding is retained by the court to resolve claims of equitable distribution, is not controlling. See 23 P.S. §801(b).

### (2) Equitable Distribution

In order to distribute the marital property of the parties, the facts of this case must be examined with regard to the relevant factors as set forth in Section

---

Whenever any husband and wife, hereafter acquiring property as tenants by entireties, shall be divorced, they shall thereafter hold such property as tenants in common of equal one-half shares in value and either of them may bring suit against the other to have the property sold and the proceeds divided between them. Act of May 10, 1927, P.L. 884 §1, as amended by the Act of April 28, 1978, P.L. 202, No. 53. §2(a) [1092], effective June 27, 1980; 68 P.S. §501.

401(d) of the Divorce Code of 1980, 23 P.S. §401 et seq., and which include:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of the parties.

(4) The contribution by one party to the education, training, or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties including, but not limited to, medical, retirement, insurance, or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time of the division of property is to become effective.

The parties were married to each other for almost 14 years and for all but one of those years, the parties resided in the house in Norristown. The parties owned the house as tenants by the entireties since 1972.

This is the second marriage for each of the parties. No children were born of this marriage.

Plaintiff is 59 years of age and defendant is 60 years of age. Both parties are in good health, and both parties have worked as laborers at Superior Tube Company for the past 30 years and continue to

do so. Plaintiff currently earns a yearly salary of approximately $17,300 while defendant's salary is slightly higher at approximately $18,300. Thus the age, health, station, amount and sources of income, vocational skills and employability of the parties are comparable. There is no direct testimony as to the estate, liabilities, and needs of each of the parties, therefore, the court considers them to be comparable.

There is no testimony with regard to either party's contribution to the education or training of the other, their separate opportunities for acquiring capital assets or income, if any, in the future, or any sources of income other than from their work at Superior Tube. The court, therefore, concludes that none of these factors is present in this matter.

Regarding each party's contribution in the acquisition and preservation of the marital property, the following facts exist: The house was purchased by defendant prior to the parties' marriage with his own funds. Plaintiff did, however, contribute somewhat in paying toward the expenses of the property for the first three years of their marriage and as a homemaker, in that she did all the cooking. Both parties cleaned the house. In addition, plaintiff paid for certain curtains, furniture, bedspreads and shrubbery used in and about the house and, in particular, transferred $1,300 from her bank account to defendant in order to help pay household expenses, paid $300 to build a new patio, and paid $1,000 for new carpeting. The value of the real estate considered to be marital property is in the amount of $32,000. The parties have requested that the realty be transferred to the defendant with the appropriate marital share of the plaintiff being awarded to her in cash, which shall be paid by defendant.

The standard of living established by the parties during their marriage was a comfortable, though not luxurious one. Their incomes were in approximate parity. Both parties, however, will have to continue to work in order to maintain the standard to which they have become accustomed.

Presently, the economic circumstances of the parties are quite similar. Each has been employed by the same company for a long period of time with almost equal salaries. Defendant currently resides in the marital residence, while plaintiff, who left the same in July of 1980, currently resides in an apartment in Royersford, Montgomery County, Pa.

From an overall consideration of the Section 401(d) factors, this court finds that, in addition to her specific cash outlays totaling approximately $2,600 and her contribution as a homemaker, plaintiff's contributions to the marital residence were almost entirely limited to the first three years of the marriage. Defendant, on the other hand, contributed all the funds used to purchase the house, assumed basically all decision-making and bill-paying functions, paid almost all the expenses of the house, and is consequently entitled to a substantially larger share of the house than plaintiff.

## DECREE NISI

And now, this October 14, 1982, after hearing, it is ordered and decreed that June Burry and John Burry execute and deliver to John Burry all documents necessary to transfer and convey the real estate located and known as 323 Warren Street, Norristown, Montgomery County, Pa., to John Burry, within (30) days of the date of this decree. It is further ordered and decreed that John Burry pay to June Burry the sum of $9,000 simultaneously with

the delivery to him of the aforesaid deed, representing her equitable share of the marital property.

Unless exceptions are filed within ten days of service hereof, said decree shall become the final decree of this court as of course.

